IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ROGELIO BENITEZ,<br><br>Defendant. | CRIMINAL CASE NO.<br>1:12-CR-00232-CAP-LTW |

## **REPORT AND RECOMMENDATION**

This matter is presently before the Court concerning the competency of Defendant Rogelio Benitez ("Defendant") to stand trial. Defendant has been indicted by the grand jury for one count of conspiring to distribute and possess with intent to distribute at least five hundred grams of methamphetamine, in violation of 21 U.S.C. §§ 846, 841 (a)(1) and 841(b)(1)(A); and count of conspiring to conduct illegal financial transactions, and conspiring to commit money laundering, in violation of 18 U.S.C § 1956(h). This Court held a competency hearing on July 24, 2013. Docket Entry [105]. For the reasons discussed below, the undersigned reports that Defendant is not presently suffering from a mental disease or defect rendering him mentally incompetent such that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Therefore, the undersigned **RECOMMENDS** that Defendant be found **COMPETENT** to stand trial.

## PROCEDURAL BACKGROUND

On December 18, 2012, the Government filed a Motion for Psychiatric Examination of Defendant. Docket Entry [62]. The Defendant did not oppose the Government's motion. On October 3, 2012, this Court granted the Government's motion, stayed the case, and ordered Defendant to undergo a psychological examination to determine his competency. Defendant was evaluated on November 27, 2012. (See Govt. 1, attached and filed under seal). Andrea G.L. Elkon, Ph.D., a licensed clinical psychologist, conducted a psychological examination of Defendant and issued a written report detailing the bases of her opinion regarding Defendant's competency. (Id.). On July 24, 2013, an evidentiary hearing was held on the issue of Defendant's mental competency to stand trial on the charges listed in the indictment. This case is now ready for a ruling.

## BACK GROUND FACTS

I.  **Dr. Andrea Elkon's Evaluation of Defendant**

On October 7, 2009, Defendant underwent a mental health evaluation to assess his competency to stand trial and his sanity at the time of the alleged offense. Pursuant to this Court's order, Defendant was evaluated by Dr. Elkon at his attorney's law office in Atlanta, Georgia. (Competency to Stand Trial Evaluation, Gov't. Ex. 1, filed under seal). Dr. Elkon interviewed Defendant on November 27, 2012. (Gov't Ex. 1 at 1). Paul Kish, Defendant's attorney, was present for the duration of the interview. (Id.).

Prior to the interview and mental status examination, Defendant was informed by Dr. Elkon that she would be evaluating him to assist the Court with determining his competency to stand trial. (Gov't Ex. 1 at 2). Defendant was informed that the evaluation was court ordered, he had the right not to answer questions, the evaluation and test results were not confidential, and anything he said during the interview could be included in a report to the Court in either written format or oral testimony. (Id.). Dr. Elkon also advised Defendant that the written report would be sent to the judge, with copies to his attorney, and the prosecuting attorney. (Id.). Defendant demonstrated a clear understanding of his rights, and agreed to participate in the examination. (Id.). After evaluating the Defendant, Dr. Elkon opined that Defendant is competent to stand trial, capable of understanding the nature and object of the proceeding against him as well as his own condition in reference to the proceedings, and capable of providing his attorney proper assistance in his defense. (Gov't Ex. 1 at 4). In addition to the foregoing summary, this Court notes the following relevant facts were provided in Dr. Elkon's written evaluation of Defendant.

    A.    <u>Defendant's Personal History</u>

Defendant is a single male born in Miami, Florida and raised in Carrollton, Georgia. (Gov't Ex. 1 at 4). Defendant is the youngest of four children born to the union of his biological parents. (Id.). Defendant's mother was his primary caregiver because his father passed away while he was young. (Id.). Dr. Elkon noted that

3

Defendant's upbringing was pretty unremarkable and there was "no known history of physical or sexual abuse in the family." (Id.). Defendant graduated from high school in regular education classes with A's, B's and a few C's, and attended college for one year. (Id.). Defendant has held construction type jobs (i.e., painting, remodeling, and renovation). (Id.). Defendant has never been married, has no children, and is currently under house arrest while living with his mother in Carrollton, Georgia. (Id.).

      B.    Defendant's Previous Mental Health History

According to Dr. Elkon, Defendant has a history of significant substance abuse. (Gov't Ex. 1 at 4). Defendant reported that he began experimenting with alcohol and marijuana (natural and synthetic "spice") at the age of 22, with essentially continuous use until May 2012. (Id.). In addition, Defendant cited his heaviest period of alcohol use was 2011 to 2012, when he would drink liquor and beer to intoxication two to three times per week. (Gov't Ex. 1 at 4-5). Defendant reported he has remained clean and sober since May 2012.

On October 21, 2012, Defendant, after having gone without sleep for four days, presented to the Emergency Room at Tanner Medical Center acting odd and suffering from auditory hallucinations. (Govt. Ex. 1 at 5). The evaluating clinician indicated Defendant appeared psychotic. (Id.). Defendant was transferred to West Georgia Regional Hospital for additional treatment, but no records were available for Dr. Elkon to review. (Id.).

Five days later, Defendant presented to Cobb/Douglas Wellstar Hospital complaining of "talking to voices in [his] head." (Id.). Defendant was admitted to the inpatient psychiatric unit from May 20, 2012, to May 25, 2012. (Id.). Records indicate Defendant was given Risperdal (anti-psychotic), Ativan (anti-anxiety), Zyprexa (anti-psychotic), and Haldol (anti-psychotic) to use as needed. (Id.). At the time of Defendant's discharge, Defendant's hallucinations had diminished completely. (Id.). Defendant was diagnosed with schizophrenia and polysubstance abuse and referred to his local community mental health center for follow-up. (Id.). After Defendant's discharge, he attended counseling at Foundations Recovery Network three times per week for approximately one month. (Id.).

Between April and July 2012, Defendant underwent psychological assessment with Dr. Mark Ackerman. (Id.). Dr. Ackerman's assessment yielded a diagnoses of schizophrenia, paranoid type and poly-substance drug dependence. (Gov't Ex. 1 at 6). At the time of the assessment, Defendant admitted to current daily marijuana use and prior heavy alcohol use. (Id.).

As a condition of his release from incarceration on bond, Defendant was ordered to undergo inpatient psychiatric hospitalization at Peachford Hospital in Atlanta, Georgia. (Id.). Defendant was hospitalized from September 21, 2012, until September 25, 2012. (Id.). While hospitalized, Defendant received Risperdal, Trileptal, and Haldol Decanoate (an anti-psychotic administered via intramuscular injection). It appears that

Defendant was administered the anti-psychotic because his sister reported that he was getting more paranoid, exhibiting inappropriate bizarre behavior, and having mood and visual hallucinations. (Id.). At the time of discharge, Defendant presented with a "stable mood" and no psychotic symptoms were present. (Id.). Defendant's diagnoses upon discharge included schizophrenia, paranoid type, and polysubstance dependence. (Id.).

### C. Dr. Elkon's Mental Status Examination

As earlier noted, Defendant was interviewed by Dr. Elkon in his attorney's office. (Gov't Ex. 1 at 6). Defendant was calm, alert, oriented to person, place, and time, and was able to clearly articulate his awareness of Dr. Elkon's role and the purpose of the examination. (Id.). Defendant cooperated well, established good eye contact, and his speech was normal with respect to rate, volume, quantity, and intensity. (Id.). According to Dr. Elkon, Defendant denied experiencing auditory or visual hallucinations, delusions, or paranoid thinking, and no signs of such were evident. (Id.). Overall, Defendant presented as clinically stable.

Dr. Elkon administered the Montreal Cognitive Assessment, a structured mental status examination that screens for intellectual impairment. (Gov't Ex. 1 at 7). Defendant scored twenty-nine out of thirty points which is suggestive of normal congnitive functioning. (Id.). Defendant's recent and remote memory were adequate and intact. (Id.). Based on Defendant's testing results coupled with Defendant's verbal

6

skills, Dr. Elkon estimated that Defendant's intellectual functioning falls within the average range.

### D. Dr. Elkin's Assessment of Defendant's Competency

At the time of his evaluation, Defendant exhibited adequate awareness of his current legal situation, including the nature of his charges and possible consequences. (Gov't Ex. 1 at 3). According to Dr. Elkon, Defendant demonstrated knowledge of available pleas, basic legal proceedings, and the roles of courtroom personnel. (Id.). In instances when Defendant did not know certain information, such as some details of the insanity plea, he was able to retain this material following instruction. (Id.). Additionally, Defendant reportedly offered his attorney a logical and detailed account of the circumstances surrounding the alleged offenses. (Id.). Defendant exhibited good rapport with his attorney at the time of his examination, presented as clinically stable, and his cognitive skills were sufficient for discussing the alleged offenses. (Id.). Defendant exhibited calm and organized behavior that would be considered appropriate for the courtroom. (Id.). Dr. Elkon opined that at the time of the evaluation, Defendant **was capable** of understanding the nature and object of the proceedings against him, as well as his own condition, in reference to these proceedings. (Gov't Ex. 1 at 3-4). Dr. Elkon further opined that Defendant was capable of providing his attorney proper assistance in his defense. (Id.). It is Dr. Elkon's opinion that at the time of Defendant's examination that he is competent to stand trial. (Id.).

7

## **LEGAL STANDARD FOR JUDGING COMPETENCY**

Title 18 U.S.C. § 4241, et seq., guides the assessment of competence for a defendant in federal criminal proceedings. Section 4241(d) provides that the Court shall find the defendant to be incompetent "[i]f, after the [competency] hearing, the court finds by a preponderance of the evidence that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense . . . ." 18 U.S.C. § 4241(d). The test is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402 (1960) (per curiam) (construing § 4241's predecessor, 18 U.S.C. § 4244 (1958)).

## **CONCLUSION**

The Court finds, by a preponderance of the evidence, that Defendant is not suffering from a mental disease or defect that renders him unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense. Instead, this Court finds that Defendant Benitez has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him. In reaching this conclusion, this Court is persuaded by, among other things, the fact that Defendant did

not challenge Dr. Elkon's assessments, findings, and opinions as discussed above. This Court is also persuaded by Dr. Elkon's observation that although Defendant has been treated for substance abuse and mental health issues, at the time of his evaluation, Defendant was calm, alert, oriented to person, place, and time, and was able to clearly articulate his awareness of Dr. Elkon's role and the purpose of the examination. The Court was further persuaded by the following:

1. Defendant cooperated well, established good eye contact, and his speech was normal with respect to rate, volume, quantity, and intensity;

2. Defendant denied experiencing auditory or visual hallucinations, delusions, or paranoid thinking, and no signs of such were evident;

3. Defendant demonstrated knowledge of available pleas, basic legal proceedings, and the roles of courtroom personnel;

4. Defendant reportedly offered his attorney a logical and detailed account of the circumstances surrounding the alleged offenses;

5. Defendant exhibited good rapport with his attorney at the time of his examination, presented as clinically stable, and his cognitive skills were sufficient for discussing the alleged offenses; and

6. Defendant exhibited calm and organized behavior that would be considered appropriate for the courtroom.

Having determined that Defendant is competent to stand trial, this Court notes that prior to the competency hearing, Defendant filed at least two motions which are still pending before the Court. Defendant has filed a Motion to Suppress Evidence Derived from Illegally Intercepted Communications and a Motion for Access to Materials Redacted from Wiretap Applications. Docket Entries [80, 81]. Because the Government

has not yet fled a response to Defendant's pending motions, Defendant is hereby directed to inform the Court no later than November 22, 2013, if he intends to withdraw said motions or wants the Court to rule on the motions after the Government has been given an opportunity to respond to the motions.

**IT IS REPORTED AND RECOMMENDED**, this ___8___ day of November, 2013.

s/Lnda T. Walker
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)